UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KATHERINE LOUISE WHITNEY,

                Plaintiff,

    v.

CITY OF TACOMA, *et al.*,

                Defendants.

Case No. C19-5582 BHS-MLP

REPORT AND RECOMMENDATION

      Plaintiff Katherine Whitney, proceeding *pro se*, filed the instant civil rights complaint in Pierce County Superior Court following an alleged assault at a residence that she was referred to by a nonprofit organization, Share and Care House of Tacoma ("Share and Care House"). (*See* Dkt. # 1-2 (Compl.).) Plaintiff's complaint seeks injunctive relief and damages based on allegations of Fourth, Fifth, and Fourteenth Amendment violations. (*See generally* Compl.) Defendants Jeff Rodgers and Daryl Shuey removed Plaintiff's action to this Court. (Dkt. # 1 (Notice of Removal).)[1] This matter is now before the Court on several motions to dismiss filed by Defendants Rodgers, Deputy Shuey, City of Tacoma, Secretary Cheryl Strange, Charlene

---

[1] Plaintiff submitted objections to the removal of this action (dkt. # 8 (Objections)), arguing removal was against her right to choose a forum and asserting a seemingly misplaced argument that her damages would be capped at $75,000 in federal court. The Court finds removal was proper pursuant to 28 U.S.C. § 1331 because this action raises federal questions.

REPORT AND RECOMMENDATION - 1

1  Hamblen, Misty Fitzsimmons, and Taffi Wheeldon. (Dkt. # 4 ("Rodgers and Shuey Mot."); Dkt.

2  # 9 ("City Mot."); Dkt. # 11 ("Strange Mot."); Dkt. # 16 ("Hamblen, Fitzsimmons, and

3  Wheeldon Mot.").)[2]

4  The Court, having reviewed the parties' submissions, the governing law, and the balance

5  of the record, finds Plaintiff's complaint fails to state a claim upon which relief can be granted as

6  to all of the Defendants. Therefore, the Court recommends Defendants' motions to dismiss be

7  GRANTED and Plaintiff be granted leave to file an amended complaint for all but one of her

8  claims.

## I.   BACKGROUND

10  For the purpose of deciding the pending motions to dismiss, the allegations contained

11  within Plaintiff's complaint are considered true. Plaintiff asserts that around December 2016, she

12  was approved by the Department of Social and Health Services ("DSHS") to receive Housing

13  and Essential Needs ("HEN") benefits. (Compl. at 4.) DSHS contracted with Share and Care

14  House to help manage Plaintiff's HEN benefits. (*Id.*)

15  Plaintiff alleges that in October 2018, a Share and Care House employee, Taffi

16  Wheeldon, gave her a list of potential landlords that work with Share and Care House and accept

17  HEN benefits. (*Id.*) Plaintiff used the list provided by Ms. Wheeldon to contact a landlord,

18  Natalie Howell. (*Id.*) Ms. Wheeldon provided Plaintiff and Ms. Howell with information

19  regarding the type of lease agreement that they needed and advised them that an inspection of the

20  residence that Ms. Howell managed was required. (*Id.*) Ms. Howell stated an inspection had

---

[2] Plaintiff submitted a response (dkt. # 18 ("Whitney Response")) prior to the filling of Defendants Hamblen, Misty Fitzsimmons, and Taffi Wheeldon's motion to dismiss. Only Defendant Secretary Strange submitted a reply. (Dkt. # 22 ("Strange Reply").)

already been conducted several months prior. (*Id.*) Ms. Wheeldon did not confirm that the inspection was completed. (*Id.*)

In November 2018, Plaintiff moved into the residence managed by Ms. Howell. (*Id.*) Later that month, Plaintiff alleges that Ms. Howell displayed hostile behavior toward Plaintiff. (*Id.* at 5.) Ms. Howell's family subsequently moved into the residence and also displayed aggressive behavior towards Plaintiff. (*Id.*) Plaintiff reported this behavior to Ms. Wheeldon, who indicated Ms. Howell should have been removed from Share and Care House's landlord list. (*Id.*) Ms. Wheeldon provided Plaintiff with a new list of recommended properties. (*Id.*) Plaintiff used the list to apply for housing at a new property: the Morning Tree Park Apartments. (*Id.*)

In January 2019, while Plaintiff's application at the Morning Tree Apartments was presumably still pending, Plaintiff alleges that Ms. Howell locked her out of the residence. (*Id.*) Although Plaintiff was eventually able to enter the residence, she feared bodily harm and fled the residence without her belongings. (*Id.* at 5-6.) Because Share and Care House was not open, Plaintiff met with a social worker at a DSHS office. (*Id.* at 6.) The social worker contacted Share and Care House for Plaintiff and gave Plaintiff the contact information for the Puyallup Mission and the Pierce County Chamber of Commerce. (*Id.*) Plaintiff left several voice messages with the Pierce County Chamber of Commerce. (*Id.*) Defendant Jeff Rodgers, a Pierce County Social Service Program Specialist, returned Plaintiff's calls and listened to Plaintiff's report regarding her lack of housing and interactions with Share and Care House. (*Id.*)

In February 2019, the Morning Tree Apartments informed Plaintiff that her application was approved and that Share and Care House needed to conduct an inspection. (*Id.*) It appears from the complaint that Plaintiff could not reach Share and Care House and therefore contacted Senator Conway's office for assistance in reaching them. (*Id.*) Senator Conway's office allegedly

informed Plaintiff that Defendant Charlene Hamblen, director of Share and Care House, stated Plaintiff's application had "timed out" and that she was not able to receive benefits. (*Id.*) Plaintiff contacted Ms. Wheeldon for clarification regarding her application. (*Id.* at 7.) Ms. Wheeldon stated that Ms. Hamblen had been mistaken and that Ms. Wheeldon would send an email to the Morning Tree Park Apartments explaining how the HEN benefits program works, however, Plaintiff asserts Ms. Wheeldon's email represented that Plaintiff's benefits were month-to-month, even though they were annual, which allegedly caused Plaintiff's application approval to be rescinded. (*Id.*) Later that month, Defendant Misty Fitzsimmons, a Share and Care House employee, apologized for Plaintiff's lack of housing and stated she could not communicate with Plaintiff through email due to company policy. (*Id.*) Ms. Hamblen also informed Plaintiff that Share and Care House employees could not communicate with clients through email. (*Id.*)

In March 2019, it appears Plaintiff requested that Defendant Daryl Shuey, Pierce County Sheriff's Deputy, remove Ms. Howell and her family from the residence and conduct a civil standby while Plaintiff gathered her belongings. (*Id.* at 7-8.) Deputy Shuey refused to remove Plaintiff's roommates and declined to conduct a civil standby because he saw "no need" and there was "no danger." (*Id.* at 8.) Plaintiff claims that when she returned to the residence by herself she was severely beaten with a baseball bat by Ms. Howell and other individuals. (*Id.*) After the alleged beating, Plaintiff ran to a neighbor's house and called the police. (*Id.*) Plaintiff alleges that when Deputy Shuey arrived at the scene, he asked Plaintiff why she went to the residence alone. (*Id.*) Plaintiff stated that she did so because he said there was no danger. (*Id.*) In June 2019, Plaintiff initiated this action seeking $20 million in compensatory damages from the Defendants for the trauma she alleges they put her through.

## II.   DISCUSSION

Plaintiff alleges that Defendants violated her rights "under the jurisdiction under the Fourth, Fight[Fifth], and Fourteenth Amendments to the United States Constitution." (Compl. at 3.) All Defendants move to dismiss all claims against them pursuant to Rule 12(b)(6). In the alternative, Defendant City of Tacoma asks for a more definite statement pursuant to Rule 12(e). (City Mot. at 2.) Additionally, Defendant Rodgers moves to dismiss pursuant to Rule 12(b)(2) (Rodgers and Shuey Mot. at 2-3) and Defendant Secretary Strange moves to dismiss pursuant to Rule 12(b)(1) (Strange Mot. at 11). The Court will address each motion in turn.

### A.   Defendant Secretary Strange's Rule 12(b)(1) Motion to Dismiss

Defendant Secretary Strange asserts Plaintiff's claim against her in her official capacity should be dismissed because the claim is, in effect, a claim against DSHS and the State is entitled to sovereign immunity. (Strange Mot. at 11-12.) Dismissal is appropriate under Fed. R. Civ. P. 12(b)(1) when the court lacks subject matter jurisdiction over the claim. *See* Fed. R. Civ. P. 12(b)(1). "Although sovereign immunity is only quasi-jurisdictional in nature, Rule 12(b)(1) is [the] proper vehicle for invoking sovereign immunity from suit." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015). Neither state agencies nor state officials acting in their official capacities are "persons" under 42 U.S.C. § 1983, and they may not be sued unless the State waives sovereign immunity. *See Howlett v. Rose,* 496 U.S. 356, 365 (1990); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989).

Here, Plaintiff has not established that sovereign immunity was waived. To the contrary, Defendant Secretary Strange is explicitly invoking sovereign immunity in her motion. (Strange Mot. at 11.) Accordingly, the Court recommends that Plaintiff's claim against Defendant

Secretary Strange in her official capacity be dismissed with prejudice.[3] The Court addresses Plaintiff's claims against Defendant Secretary Strange in her individual capacity below.

### B.     Defendant Rodgers' Rule 12(b)(2) Motion to Dismiss

Defendant Rodgers asserts that the Court lacks personal jurisdiction in this action because he has not been served. (Rodgers and Shuey Mot. at 3.) Defendant Rodgers' suggestion, through his 12(b)(2) motion, that insufficient service deprives the court of personal jurisdiction misconceives the relationship between service of process and personal jurisdiction. Personal jurisdiction provides a basis for an exercise of jurisdiction, but service of process is the means by which a court asserts its jurisdiction over the person. *SEC v. Ross,* 504 F.3d 1130, 1138 (9th Cir. 2007). That is, there is no "lack of personal jurisdiction" for the purposes of Fed. R. Civ. P. 12(b)(2); instead, there is an insufficient service of process under Fed. R. Civ. P. 12(b)(5).

Fed. R. Civ. P. 4 provides, in part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

"Once service is challenged, [a] plaintiff[ ] bear[s] the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

Here, Plaintiff has not shown that service of process was executed in accordance with Fed. R. Civ. P. 4, and her response fails to address Defendant Rodgers' insufficient process of

---

[3] The Court notes that while sovereign immunity precludes claims for damages against state officers in their official capacities, it does not preclude actions against such individuals for injunctive or other prospective relief. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989). Plaintiff does not appear to seek injunctive relief from Defendant Secretary Strange in her official capacity, however, should Plaintiff seek such relief in her amended complaint, it would not be precluded by sovereign immunity.

REPORT AND RECOMMENDATION - 6

service argument. Therefore, in the alternative to the complaint being dismissed as to Defendant Rodgers for failure to state a claim upon which relief can be granted, discussed below, Plaintiff's claims against Defendant Rodgers should also be dismissed without prejudice for failure to execute service of process.

### C. Defendants Rodgers, Deputy Shuey, Secretary Strange, City of Tacoma, Hamblen, Fitzsimmons, and Wheeldon's Rule 12(b)(6) Motions to Dismiss

Defendants Rodgers, Deputy Shuey, Secretary Strange, City of Tacoma, Hamblen, Fitzsimmons, and Wheeldon argue Plaintiff's complaint should be dismissed because it fails to state a claim upon which relief may be granted. "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) the violation of the rights secured by the Constitution and laws of the United States, and (2) the deprivation was committed by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) *overruled on other grounds*. To be liable, the wrongdoer must personally cause the violation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Plaintiff alleges violations under the Fourth, Fifth, and Fourteenth Amendment. The Court

will address each below.

### 1.     Fourth Amendment Claims

The Fourth Amendment protects individuals against unreasonable searches and seizures and is made applicable to the states by the Fourteenth Amendment. U.S. Const. amends. IV, XIV; *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012). Defendants argue Plaintiff's claims of Fourth Amendment violations are not cognizable because Plaintiff has not asserted any allegations of a search or seizure. (Rodgers and Shuey Mot. at 6-7; City Mot. at 5; Strange Mot. at 7; Hamblen, Fitzsimmons Wheeldon Mot. at 6.) The Court agrees that Plaintiff's complaint asserts no factual allegations regarding a search or seizure by any of the named Defendants, and therefore her Fourth Amendment claims fail. The Court therefore recommends Plaintiff's Fourth Amendment claims against all Defendants be dismissed without prejudice.

### 2.     Fifth Amendment Claims

Plaintiff's Fifth Amendment claims also fail because the Fifth Amendment due process clause does not apply to actions by local police officers or municipalities. "[T]he Fifth Amendment's due process clause only applies to the federal government," not state or local law enforcement officials. *Bingue v. Prunchak,* 512 F.3d 1169, 1174 (9th Cir. 2008); *see also Castillo v. McFaddan,* 399 F.3d 993, 1002 n.5 (9th Cir. 2005). Plaintiff has not alleged that Defendants are federal actors, and therefore cannot support a claim under the Fifth Amendment. The Court recommends Plaintiff's Fifth Amendment claims against all Defendants be dismissed without prejudice.

### 3.     Fourteenth Amendment Claims

A plaintiff can assert a procedural due process violation, substantive due process violation, or an equal protection violation under the Fourteenth Amendment. Procedural due

process imposes constraints on governmental decisions that deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Substantive due process protects certain individual liberties from undue government restraint. *Kelley v. Johnson*, 425 U.S. 238, 244 (1976). An equal protection violation claim concerns actions "with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Construing Plaintiff's complaint liberally, the only Fourteenth Amendment violations alleged appear to involve substantive due process concerns.

      a.  Defendant City of Tacoma

Defendant City of Tacoma argues that Plaintiff has not stated a cognizable claim because she failed to allege any facts against the municipal entity of City of Tacoma or any of its employees or officers, and failed to assert any official policy or custom on behalf of the City of Tacoma. (City Mot. at 3-8.) "While local governments may be sued under § 1983, they cannot be held vicariously liable for their employees' constitutional violations." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013). To state a claim against a municipality under § 1983, a plaintiff must allege sufficient facts to support a reasonable inference that the execution of a policy, custom, or practice was the "moving force" that resulted in the deprivation of his constitutional rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-92 (1978).

Here, Plaintiff names the Defendant City of Tacoma in the caption of the complaint, but fails to list Defendant City of Tacoma as a party in the body of the complaint and fails to state

any factual allegations against Defendant City of Tacoma or any of its employees.[4] (*See* Compl.) In failing to state any facts regarding Defendant City of Tacoma, Plaintiff has not alleged that it established a policy which amounted to deliberate indifference and was the moving force behind any alleged constitutional violations. As noted by Defendant City of Tacoma, Plaintiff's allegations involve other local governmental entities, a non-profit agency, and employees thereof. (City Mot. at 7.) Plaintiff has therefore failed to allege facts showing Defendant City of Tacoma is liable under § 1983. Accordingly, the Court recommends that Plaintiff's claims against Defendant City of Tacoma should be dismissed without prejudice.

                                                                                                     b.            Defendants Jeff Rodgers and Deputy Daryl Shuey

Defendant Rodgers argues that Plaintiff failed to identify any action that shows he personally participated in causing a constitutional harm to Plaintiff. (Rodgers and Shuey Mot. at 5.) Similarly, Deputy Shuey argues Plaintiff failed to show he acted unlawfully. (*Id.* at 6.) Defendants Rodgers and Deputy Shuey further argue Plaintiff failed to state a cognizable federal claim because Plaintiff failed to allege any actions by Defendants that were an abuse of power or used as an instrument of oppression, and that Plaintiff had no constitutional right to be protected by them from harm inflicted by a third party. (*Id.* at 7.)

The Due Process Clause "was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotation marks and quoted sources omitted). A state actor generally has no constitutional obligation to protect an individual from harm by a third party.

---

[4] In Plaintiff's response, she states "Tacoma and Pierce county" did not do their jobs correctly and appears to raise some allegation regarding Defendant City of Tacoma's allocation of money to DSHS and the Sheriff's department. (Whitney Response at 3-4.) Plaintiff's response also includes "City of Tacoma, A Municipal Entity, et al vis a vis, Victoria Woodards" as a Defendant, but alleges no facts regarding Ms. Woodards. (*Id.*) The Court notes that these assertions also do not sufficiently allege a claim against Defendant City of Tacoma or any of its employees.

*DeShaney v. Winnebago Cty. Dept. of Soc. Servs.*, 489 U.S. 189, 195-201 (1989). This general rule arises from the fact the Due Process Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.* at 195. Generally, a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000).

There are two exceptions to this general rule. The special-relationship exception, which applies where the state "takes a person into its custody and holds him there against his will," does not apply as Plaintiff has not alleged that she was taken into custody in any way during the relevant time period. *DeShaney*, 489 U.S. at 199-200. The state-created danger exception applies when the state affirmatively places a plaintiff in danger by acting with deliberate indifference to a known or obvious danger. *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971-72 (9th Cir. 2001).

The facts set forth by Plaintiff do not support a substantive due process claim against either Defendant Rodgers or Defendants Deputy Shuey. Defendants did not have an obligation to protect Plaintiff from harm inflicted by Ms. Howell and Plaintiff does not allege either Defendant took an affirmative act with deliberate indifference to expose Plaintiff to an obvious danger, as required for the state-created danger exception. Plaintiff's only allegation against Defendant Rodgers is that he returned her phone call to the Pierce County Chamber of Commerce and listened to her report regarding her interactions with Share and Care House.[5] (Compl. at 6.) Plaintiff does not allege that in response to that phone call, Defendant Rodgers

---

[5] In Plaintiff's response, she claims that Defendant Rodgers additionally said that "he'd call back when she said she has receipts paid to both Dany Danette Crow and Mr. Young Kim, proving mismanagement of funds and fraud but no call back did plaintiff receive." (Whitney Response at 3.) It appears from Plaintiff's complaint that Mr. Kim is the owner of the residence managed by Ms. Howell and Mr. Crow is Plaintiff's former roommate. (Compl. at 5, 8.) Regardless, the Court cannot discern how Defendant Rodgers' alleged failure to call Plaintiff back caused Plaintiff a constitutional violation.

REPORT AND RECOMMENDATION - 11

took any action, or was required to take any action, and similarly does not show how he personally participated in any of Plaintiff's alleged harm.

With regard to Defendant Deputy Shuey, Plaintiff alleges that he refused to remove her roommates from the residence, advised Plaintiff she was welcome to return to her residence, and declined Plaintiff's request for a civil standby because he saw no danger. (*Id.* at 7-8.) Plaintiff asserts no allegations that Defendant Deputy Shuey had authority to remove her roommates, was incorrect that Plaintiff could return to her residence, or that he was required to conduct a civil standby. Plaintiff's allegations fail to show Defendant Deputy Shuey took any affirmative step to expose her to danger. Rather, Plaintiff's complaint states that Defendant Deputy Shuey believed there was no danger in Plaintiff returning to her residence.

Plaintiff's allegations against Defendants Rodgers and Deputy Shuey are, at most, allegations concerning negligence or a lack of care which are not cognizable under 42 U.S.C. § 1983. *See Daniels v. Williams,* 474 U.S. 327, 330-32 (1986) (holding due process clause in not implicated by a state official's negligent act); *see also Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986) (holding that due process is not implicated by the lack of care of an official causing unintended injury). Accordingly, the Court recommends that Plaintiff's claims against Defendants Rodgers and Deputy Shuey be dismissed without prejudice.

c. Defendant Secretary Cheryl Strange

In addition to being named in her official capacity, Plaintiff names Defendant Secretary Strange as a Defendant in her personal capacity. Defendant Secretary Strange argues Plaintiff failed to state a cognizable claim against her because she cannot be held liable as a supervisor, has no constitutional obligation to protect Plaintiff from third party harm, and Plaintiff alleges no

factual allegations that she personally participated in Plaintiff's alleged harm. (Strange Mot. at 5.)

"Generally, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability under 42 U.S.C. § 1983." *Jeffers v. Gomez,* 267 F.3d 895, 915 (9th Cir. 2001) (citing *Hansen v. Black,* 885 F.2d 642, 645-46 (9th Cir. 1989)). "A supervisor may be liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* (internal quotations omitted).

Plaintiff's complaint contains no allegations that Defendant Secretary Strange was personally present for, or knew of, any of the events that give rise to this matter. Plaintiff's response similarly does not allege any facts regarding Defendant Secretary Strange and only makes a vague assertion that "those who supervise need to be held accountable, along with the employee who did the actual choice, action, or non action." (Whitney Response at 2.) It therefore appears that Plaintiff's claim against Defendant Secretary Strange is based solely on a theory of supervisory liability. Further, as discussed above, Plaintiff had no constitutional right to be protected from harm by a third party and Plaintiff has not alleged that Defendant Secretary Strange took any affirmative act to expose her to an obvious danger. Plaintiff has therefore failed to assert a cognizable legal claim or personal participation by Defendant Secretary Strange in a constitutional violation.

Accordingly, the Court recommends that Plaintiff's claims against Defendant Secretary Strange in her personal capacity be dismissed without prejudice.

                d.      Defendants Charlene Hamblen, Misty Fitzsimmons, and Taffi Wheeldon

Defendants Hamblen, Fitzsimmons, and Wheeldon contend that Plaintiff has not, and cannot, establish that they were state actors and therefore they are not subject to suit under 42 U.S.C. § 1983. (Hamblen, Fitzsimmons, and Wheeldon Mot. at 2-6.) Generally, private parties do not act under color of state law. *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991). The Supreme Court has articulated four tests for determining whether a private individual's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test. *Id.* at 445. Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists. *Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002).

The public function test is only satisfied upon a showing that the function at issue is both "traditionally *and* exclusively governmental." *Lee,* 276 F.3d at 555 (emphasis added)."'Joint action' exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party, or otherwise has so far insinuated itself into a position of interdependence with the non-governmental party that it must be recognized as a joint participant in the challenged activity." *Naoko Ohno v. Yuko Yasuma,* 723 F.3d 984, 996 (9th Cir. 2013) (internal quotation marks and citations omitted). Under the state compulsion test, "[a] state may be responsible for a private entity's actions if it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Caviness v. Horizon Community Learning Center, Inc.,* 590 F.3d 806, 816 (9th Cir. 2010). The nexus test asks whether "there is such a close nexus between the State and the challenged action that the seemingly private behavior may

REPORT AND RECOMMENDATION - 14

be fairly treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 (2001) (internal quotations omitted).

As a threshold matter, Plaintiff does not allege, and it does not appear, that Share and Care House is a government entity. Rather, it appears Share and Care House is a private, non-profit organization and that Defendants Hamblen, Fitzsimmons, and Wheeldon were working in their capacity as Share and Care House employees during the relevant time period. Plaintiff's allegations against Defendants Hamblen, Fitzsimmons, and Wheeldon are minimal and center mostly around Share and Care House's assistance in recommending housing options. Specifically, Plaintiff alleges Defendant Hamblen stated Plaintiff's benefits had "timed out" and that Share and Care House could not communicate with Plaintiff through email. (Compl. at 6, 7) Plaintiff also alleges Defendant Fitzsimmons stated Share and Care House could not communicate with clients through email. (*Id.* at 8.) Lastly, Plaintiff alleges Defendant Wheeldon provided a list of housing recommendations with landlords who accept HEN benefits, communicated with Plaintiff's landlord regarding a lease agreement and an inspection, and assisted Plaintiff in communicating with a potential new landlord. (*Id*. at 4, 5, 6-7.)

Plaintiff's allegations fail to establish that Defendants Hamblen, Fitzsimmons, and Wheeldon's actions amounted to state action. Although Plaintiff raises allegations regarding various communication between these Defendants, Plaintiff, and landlords, Plaintiff does not raise any allegations regarding state action or involvement. Plaintiff also does not allege that the state exercised coercive power over Defendants or had a close nexus with the Defendants. Although Share and Care House helped facilitate payments of HEN benefits, Plaintiff has not established that in doing so, Defendants Hamblen, Fitzsimmons, and Wheeldon exercised powers that are traditionally and exclusively the prerogative of the state. *See Rendell-Baker v. Kohn,* 457

REPORT AND RECOMMENDATION - 15

U.S. 830 (1982) (holding the mere receipt of government funds did not make privately-run school government actor); *see also Miller v. Hartwood Apartments, Ltd.*, 689 F.2d 1239, 1243 (5th Cir. 1982) ("[L]essors in Section 8 new construction housing programs act as private parties."). The minimal allegations raised in Plaintiff's complaint fail to establish that Defendants Hamblen, Fitzsimmons, and Wheeldon were state actors and therefore they cannot be held liable under § 1983.

Defendant Hamblen further argues that Plaintiff does not allege any acts that resulted in a constitutional deprivation and incorporates Defendants Rodgers and Deputy Shuey's arguments set forth in their motion to dismiss. (Rodgers and Shuey Mot. at 6.) As discussed above, Plaintiff's allegations against Defendant Hamblen are minimal, and do not show that Defendant Hamblen personally participated in causing Plaintiff harm of a constitutional dimension. To the extent Plaintiff is alleging that Defendant Hamblen is liable because of her role as director of Share and Care House, there is no supervisory liability in § 1983 actions without personal involvement in a constitutional deprivation or a sufficient casual connection between the supervisor's wrongful conduct and the constitutional violation, as discussed above.

Accordingly, the Court recommends that Plaintiff's claims against Defendants Hamblen, Fitzsimmons, and Wheeldon be dismissed without prejudice.

**D.    Qualified Immunity**

Defendants Secretary Strange, Rodgers, and Deputy Shuey also argue they are entitled to qualified immunity because they were officials acting in their individual capacities. (Rodgers and Shuey Mot. at 10-11; Strange Mot. at 10-11.) Whether officials are entitled to qualified immunity depends on (1) whether the facts that the plaintiff(s) have alleged or shown make out a

constitutional violation and, (2) if so, whether the constitutional right at issue was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

As discussed below, the Court recommends granting Plaintiff leave to amend as it is conceivable that she could properly identify and assert a constitutional right, with supporting facts, in an amended complaint. The Court therefore does not address the qualified immunity arguments. However, Defendants are free to raise a qualified immunity defense again in response to a future amended complaint.

### E. Leave to Amend

When a court dismisses a *pro se* plaintiff's complaint, the court must give the plaintiff leave to amend unless it is absolutely clear that amendment could not cure the defects in the complaint. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). Because Plaintiff's allegations are vague and disjointed, it is possible that Plaintiff can cure the defects in her complaint with additional factual allegations. The Court therefore recommends Plaintiff be granted leave to amend her complaint. However, the Court finds that it is absolutely clear that no amendment could change that fact that the claims for damages against Defendant Secretary Strange in her official capacity are barred by sovereign immunity. Accordingly, the Court recommends that the claims against Defendant Secretary Strange in her official capacity be dismissed without leave to amend.

## II. CONCLUSION

For the foregoing reasons, the Court recommends that Defendants City of Tacoma, Rodgers, Deputy Shuey, Secretary Strange, Hamblen, Fitzsimmons, and Wheeldon's motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Rodgers and Shuey Mot. (dkt. # 4), City Mot. (dkt. # 9), Strange Mot. (dkt. # 11), Hamblen, Fitzsimmons, and Wheeldon Mot. (dkt. # 16)) be

1 GRANTED, but provide Plaintiff leave to amend her complaint within thirty (30) days of the
2 date of the order. The Court also recommends Defendant Secretary Strange's motion to dismiss
3 pursuant to Fed. R. Civ. P. 12(b)(1) (Strange Mot. (dkt. # 11)) be GRANTED without leave to
4 amend. Should Plaintiff fail to timely amend her complaint in a manner that resolves the
5 deficiencies described herein, the Court recommends her claims may be dismissed with
6 prejudice.

7 Objections to this Report and Recommendation, if any, should be filed with the Clerk and
8 served upon all parties to this suit by no later than **October 2, 2019**. Objections, and any
9 response, shall not exceed nine pages. Failure to file objections within the specified time may
10 affect your right to appeal. Objections should be noted for consideration on the District Judge's
11 motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if
12 any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no
13 timely objections are filed, the matter will be ready for consideration by the District Judge on the
14 day after objections were due.

15 The Clerk is directed to send copies of this order to the parties and to the Honorable
16 Benjamin H. Settle.

17 Dated this 18th day of September, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18